NATIONWIDE MUTUAL INSURANCE COMPANY v. ROMMIE G. KNIGHT, JR., BY AND THROUGH HIS GUARDIAN AD LITEM, ROBERT F. JOHNSON; ROMMIE G. KNIGHT, SR.; CALVIN LEE LOVE; DONNA BURTON LOVE; GERALD GLENN BURTON; AND DELORES BURTON KNIGHT

No. 7621SC994

(Filed 21 September 1977)

1. **Insurance § 79— automobile liability insurance— property damage— intentional ramming of vehicle**

    An automobile liability insurer is liable for property damage arising out of the insured's intentional ramming of another vehicle with the insured vehicle. G.S. 20-279.15(3).

2. **Insurance § 79— automobile liability insurance— gunshots from moving vehicle**

    Injuries caused by gunshots fired from the insured's moving automobile did not arise out of the ownership, maintenance or use of the insured automobile, and were not covered by insured's automobile liability policy.

3. **Insurance § 79— automobile liability insurance— punitive damages**

    An automobile liability policy in which the insurer agrees to "pay all sums which the Insured shall become legally obligated to pay as damages" does not cover punitive damages that might be assessed against the insured.

APPEAL by defendants from *Collier, Judge.* Judgment entered 16 September 1976 in Superior Court, FORSYTH County. Heard in the Court of Appeals 30 August 1977.

Plaintiff insurance company filed action for declaratory judgment to determine whether it has an obligation to defend certain defendants as to claims arising out of an incident occurring on 5 January 1975.

The incident of 5 January involves a tragic set of facts briefly summarized as follows: At approximately 1:00 p.m., defendants

Calvin Lee Love, Donna Burton Love, and Gerald Glenn Burton, allegedly acting on behalf of defendant Delores Burton Knight, attempted to take defendant Rommie Knight, Jr., approximately three years old, from the custody of his father. Failing in that attempt, four of the defendants, the Loves, Burton, and Delores Knight, all in Burton's automobile, began a high speed chase of the car being driven by Rommie Knight, Sr., and in which Rommie, Jr. was a passenger. In the course of the chase, the Burton automobile rammed the Knight automobile on two occasions, and the Knight automobile was shot at, allegedly by defendant Gerald Glenn Burton. Rommie Knight, Jr. was hit by a bullet which struck him behind the right ear and lodged behind his right eye. When the four defendants in the Burton automobile realized that Rommie Knight, Jr. had been hit, they abandoned the chase.

On 29 February 1975, Knight, Jr. and Knight, Sr. filed action against the four defendants who were in the Burton automobile, seeking to recover $500,000 for alleged personal injuries and damages, mental anguish, and property damage; and $25,000 as punitive damages from each of the four defendants. Plaintiff, having in effect on 5 January 1975, a policy of automobile liability insurance issued to Gerald Glenn Burton, denied coverage for personal injuries sustained by Knight, Jr., and filed this declaratory judgment action.

At the declaratory judgment hearing, the court made findings of fact and concluded that (1) the injuries sustained by the minor defendant Rommie Knight, Jr. did not arise out of the ownership, maintenance, or use of an automobile; (2) that plaintiff had no duty to provide a defense for the defendants Calvin Lee Love, Donna Burton Love, Gerald Glenn Burton, and Delores Knight under the automobile insurance policy; and (3) that plaintiff had no obligation to indemnify these same defendants as to any judgment rendered against them in the action pending against them.

Defendants Rommie G. Knight, Jr., by and through his guardian ad litem, Robert F. Johnson and Rommie G. Knight, Sr., appeal.

*J. Robert Elster and W. Thompson Comerford, Jr., for plaintiff appellee.*

*H. Glenn Pettyjohn and Theodore M. Molitoris for defendant appellants.*

ARNOLD, Judge.

[1]   Damages are sought by defendants for property damage to their vehicle which resulted from the alleged intentional ramming by the insured vehicle. Failure of the trial court to make findings of fact with respect to plaintiff's obligation to defend the claim for property damage caused by the intentional ramming of defendant's car by plaintiff's insured was error.

An automobile insurer in North Carolina is liable, within the maximum coverage required by the Financial Responsibility Act, for property damage caused by an insured who intentionally drives an automobile into plaintiff's property. In *Insurance Company v. Roberts*, 261 N.C. 285, 289, 134 S.E. 2d 654, 658 (1964), a case where defendant deliberately drove an automobile across a sidewalk and into the victim, our Supreme Court said:

> "From the standpoint of the aggressor, an injury intentionally inflicted upon another is certainly not an accident. However, from the point of view of the victim of an unexpected and unprovoked assault with an automobile, his damages are just as accidental as if he had been negligently struck while crossing the street."

> \*     \*     \*     \*

> " '[I]t is apparently the more widely accepted view that an assault constitutes an "accident", and that injuries therefrom are "accidentally sustained", within the coverage of liability insurance policies.' " (Quoting 33 A.L.R. 2d 1027, 1030; and citing 29A Am. Jur., *Insurance* § 1342.)

Under G.S. 20-279.15(3) coverage within the Financial Responsibility Act extends to property damage as well as to personal damages occurring to the victim of an accident. Plaintiff is therefore required to compensate defendant for any property damage arising out of the intentional ramming of defendant's automobile by plaintiff's insured.

The policy of automobile liability insurance involved in this case provides that Nationwide:

> "[P]ay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of:

> \*     \*     \*     \*

> "[B]odily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by any

person, arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile."

Defendants contend that the gunshot from the chasing automobile which injured the minor passenger of the fleeing automobile was an accident for which plaintiff insurance company should be liable. In support of this position that the gunshot wound resulted from an accident arising out of the "ownership, maintenance and use" of an automobile, defendants cite authority from other jurisdictions.

In Fidelity and Casualty Company of *New York v. Lott*, 273 F. 2d 500 (Fifth Cir. 1960), an accident within coverage of the policy was found where a passenger was killed when the insured driver, while attempting to shoot a deer, rested his rifle on top of the parked automobile and fired. The muzzle of the rifle did not clear the top of the car and the bullet entered through the top of the car and downward into the plaintiff.

Defendants also present this case as analogous to cases which have held the insurer liable for injuries sustained by projectiles being thrown from automobiles. In *Home Indemnity Company v. Lively*, 353 F. Supp. 1191 (WDOK 1972), for example, it was held that a pop bottle being tossed from an automobile constituted an accident arising out of the use of an automobile. *See also Wyoming Farm Bur. M. Ins. Co. v. State Farm M. Auto. Ins. Co.*, 467 F. 2d 990 (Tenth Cir. 1972).

On the other hand, plaintiff cites *Vanguard Insurance Company v. Cantrell v. Allstate Insurance Company*, 18 Ariz. App. 486, 503 P. 2d 962 (1973), where the insured fired a gun from his automobile and struck plaintiff inside a liquor store. The Arizona Court noted that the phrase "arising out of" does import a concept of causation, and held that plaintiff's injuries did not arise out of the use of a vehicle.

In the recent case of *Insurance Co. v. Walker*, 33 N.C. App. 15, 234 S.E. 2d 206 (1977), this Court held that where the insured had permanently mounted a gun rack to the cab of his truck, and had frequently used the truck to transport rifles on hunting trips, the transportation of guns was one of the uses to which the truck had been put so that an accidental discharge of a gun on the rack was an accident arising out of the use of the truck. The *Walker* case is distinguishable from the case at bar since it did not deal with an intentional firing of a gun, and there is no evidence in the present case that the insured's vehicle was used to transport guns.

**[2]** We reject defendant's contentions and conclude that the wound caused by gunshots fired from the insured's moving automobile does not constitute an accident arising out of the ownership, maintenance or use of such automobile. In *Raines v. Insurance Co.*, 9 N.C. App. 27, 30, 175 S.E. 2d 299, 301 (1970), this Court, in denying coverage for injuries caused by gunshots from within a parked automobile, stated:

> "[T]he accidental shooting of Benjamin Raines, under the facts of this case, did not arise out of the ownership, maintenance or use of the automobile which is the vehicle insured under the defendant's policy. No causal connection between the discharge of the pistol and the 'ownership, maintenance or use' of the parked automobile was shown . . . ."

Similarly, there is no causal relationship between the ownership, maintenance and use of the insured's moving vehicle, and the injury sustained by the minor defendant as a result of gunshots fired from that moving vehicle. Defendant's argument that "but for the use of the automobile" to establish causation is too broad and is rejected.

**[3]** Finally, defendants contend that Nationwide should be liable for punitive damages since the insured automobile was intentionally driven into defendant's vehicle. Among other arguments defendants assert that plaintiff agreed in its policy to "pay all sums which the Insured shall become legally obligated to pay as damages. . . ." However, we conclude that the inclusive language of the policy does not cover punitive damages that might be assessed against the insured.

The commonly accepted definition of the term "damages" does not include punitive damages. In 25 C.J.S., Damages § 1, for example, there is the following definition:

> "In its legal sense the word 'damages' is defined as meaning the compensation which the law will award for an injury done; a compensation, recompense, or satisfaction in money for a loss or injury sustained; and the most common meaning of the term is compensation for actual injury."

Punitive damages are not compensation for injuries sustained. In construing the damages clause of the Labor Management Relations Act, Justice Higgins, in *Transportation Co. v. Brotherhood*, 257 N.C. 18, 30, 125 S.E. 2d 277, 286 (1962), stated:

"[R]ecovery is authorized 'for the damages sustained and the cost of the suit.' Damages sustained are limited to actual damages suffered as a result of the wrong inflicted. [Citation omitted.] Punitive damages are never awarded as compensation. They are awarded above and beyond actual damages, as a punishment for the defendant's intentional wrong. They are given to the plaintiff in a proper case, not because they are due, but because of the opportunity the case affords the court to inflict punishment for conduct intentionally wrongful."

In summary, that part of the judgment which, in effect, excludes liability by plaintiff for property damage caused by the intentional driving of the insured vehicle into defendant's vehicle is reversed. The judgment is otherwise affirmed.

Reversed in part.

Affirmed in part.

Judges PARKER and MARTIN concur.